IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| CHARLIE JOHN BARBER, II, ) | |
| ) | |
| Plaintiff, ) | |
| ) | FILED UNDER SEAL |
| v. ) | |
| ) | 5:17 CV 1817 UJH-MHH |
| REGIONS MORTGAGE INC., et ) | |
| al., ) | JURY TRIAL DEMANDED |
| ) | |
| Defendants. ) | |

FILED
2017 OCT 30 A 10:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

## PLAINTIFF'S COMPLAINT

Charlie John Barber II (hereinafter "Plaintiff"), hereby brings this qui tam action, against Regions Mortgage Inc. D/B/A (collectively referred to herein as "Regions/Regions Bank"), for alleged violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. 1692 et seq., the Truth in Lending Act ("TILA"), 15 U.S.C. 1641(g), and for state law wrongful foreclosure:

### INTRODUCTION

1. This is a qui tam action under the False Claims Act ("FCA") by the Plaintiff Charlie John Barber II, to recover treble damages and civil penalties under the False Claims Act as amended, 31 U.S.C. §§ 3729 *et seq.* arising from fraud on Regions Mortgage, in connection with Regions Mortgage residential mortgage lending business.

2. As set forth more fully below, Regions Mortgage and its predecessors have

profited for years from its position as one of the nation's largest residential mortgage lenders while submitting false statements to the FDCPA about its underwriting and its quality control. At the same time, Regions Mortgage failed to implement quality control measures to stop the reckless lending that Regions engaged in. Not only has Regions misconduct cost the Plaintiff thousands of dollars, with additional losses expected in the future, but also it has led to mortgage defaults and an attempted home eviction and foreclosure.

## PLAINTIFF, JURISDICTION AND VENUE

3. Plaintiff Charlie John Barber II is a citizen of the United Sates and resides in the State of Alabama, and pursuant to the aforementioned statutes, brings this action on behalf of himself.

4. Defendant Regions Corporation is a bank with offices throughout the Southeast, including, Huntsville, Alabama. Regions Corporation acquired and is the successor to Regions Mortgage Corporation.

5. Regions does not make home loans, but rather securitizes or buys mortgage loans, including those originated by Regions Mortgage.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, and the FCA, particularly 31 U.S.C. § 3732(a), which specifically confers jurisdiction over actions brought pursuant to 31 U.S.C. § 3729 and. § 3730, and further, personal jurisdiction, in that some or all of the acts proscribe by § 3729 as alleged herein occurred in the Huntsville, Alabama, and further, Defendants and each of them may be found in the District and transact business in this District as set forth above.

7. Venues is proper in this District pursuant to 28 U.S.C. § 1391 and 31 U.S.C. §

3732(a) because Defendants are found, transact business, and committed the acts alleged herein and proscribed by 31 U.S.C. § 3729 in this District. Defendant's actions in the categorization, underwriting and sale of mortgage to the Plaintiff is continuous and systematic, and substantially occurred or continue to occur in Huntsville, Alabama.

## I. FACTUAL BACKGROUND

Regions originate a mortgage loan (the "Loan") in favor of Plaintiff on July 22, 2010. As part of the Loan, Plaintiff executed a $100,000 promissory note (the "Note") payable to Regions. Using the money from the Loan, Plaintiff purchased a home in Huntsville, Alabama (the "Property") Id. at 3. To provide Regions with security for the Loan, Plaintiff executed a Mortgage in favor of Regions, also dated July 22, 2010, and Regions recorded the Mortgage in the Office of the Judge of Probate of Madison County, Alabama. Id. at 4, 12-17. In relevant party, the Note and Mortgage state:

> In return for a loan that I have received, I promise to pay U.S. $100,000.00 ([the] "principal"), plus interest, to the order of the Lender. The Lender is Regions Mortgage, Inc. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."
> ...
> If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.
> The convenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17.
> ...
> The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which

payments should be made. The notice will also contain any other information required by applicable law.

. . .

Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument...If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

In June, Plaintiff inquired with defendant to inform him of the entity's name and contact information who holds the Promissory Note and to have a copy of the original Promissory Note with the wet signature.

## II. ANALYSIS

Plaintiff claims that the court should quiet title in his favor.

A. **Federal Law Claims Against Regions Mortgage**

   1. **The Truth in Lending Act**

The TILA requires a creditor "that is the new owner or assignee of [a] debt" to "notify the borrower in writing of such transfer" within 30 days of the sale, transfer, or assignment. 15 U.S.C. §1641(g). While Plaintiff contends that Regions violated TILA by failing to provide such notice.

Section 1641(g) became effective on May 20, 2009 and Congress failed to include any language to suggesting it intended § 1641(g) to apply retroactively. *See* Pub. L. No. 111-22, § 404, 123 Stat. 1632 (May 20, 2009). In the absence of such language, there is a clear presumption against retroactive application and a well settled "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place[.]" Landgraf v. USI Film Products, 511 U.S. 244, 265

(1994) (quoting Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S.827 (1990) (Scalia, J., concurring)). Based on this principle, the court cannot grant this judgment.

Moreover, the Note is a negotiable instrument under Alabama law that can be endorsed in blank (referred to as "bearer paper") and enforced by "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 7-3-309 or 7-3-418(d)." Ala. Code §§ 7-3-104, 7-3-301, 7-1-201(21)(1975). Based on the evidence, Regions originated the Loan but subsequently assigned both the Mortgage and Note to another Loan provider. As part of this assignment, Regions endorsed the Note in blank, but retained physical possession of all the Loan documents – including the Note and Mortgage – and agreed to act as the Loan Servicer "[p]ossession of a note payable to order and indorsed in blank is prima facie evidence of ownership," Regions is properly considered the owner of the Note and holder of the power of sale by virtue of possession of the Note itself. *Thomas v. Wells Fargo Bank, N.A.*, No. 2100153, 2012 WL 3764729, at *7 (Ala. Civ. App. 2012). Additionally, although § 35-4-90 states that mortgage conveyances must be recorded, it also states that a failure to do so renders the conveyance void only "as to purchasers for a valuable consideration, mortgages and judgment creditors without notice[.]" Ala. Code §35-4-90(a). In other words, "the failure to record [an] assignment of the note and mortgage is relevant only to subsequent purchasers of the property, and in this case there were none." Knowles v. HBSC Bank USA, No. CV-11-J-1953-S, 2012 WL 2153436, at *4 (N.D. Ala. June 8, 2012), citing Sixty St. Francis Street, Inc. v. Protective Life Ins. Co., 554 So. 2d 1003 (Ala. 1989). Since the failure to record has no effect and the

conveyance was executed in writing, Regions' assignment of Plaintiff's Mortgage and Note is valid.

The Mortgage Deed does not appear to convey a lawful right to foreclose, while it may satisfy the requisites of a Security Interest, by way of being a Security Agreement authenticated by a Debtor, it does not in itself satisfy the requirements of Attachment and Enforceability in regard to the Collateral named therein

(1) The formal requisites for the attachment and enforceability in a Security Interest REQUIRE that value must be given, to secure rights

(2) The failure of the LENDER to give value, prevented the security interest from attaching to the collateral, and therefore there is NOT an enforceable right against the Debtor, in regard to the debtors property UCC9-203(b) ATTACHEMENT AND ENFORCEABILITY OF SECURITY INTEREST

(3) "Certificate of title" (grant deed) means a certificate of title with respect to which a statute provides for the security interest in question to be indicated on the certificate as a condition or result of the security interest's obtaining priority over the rights of a lien creditor with respect to the collateral (The Certificate/Grant Deed has no liens on it, and YOU are the creditor of the Grant Deed) There term includes another record maintained as an alternative (grant deed) to a certificate of title by the governmental unit that issues certificates of title if a statute permits the security interest in question to be indicated on the record as a condition or result of the security interest's obtaining priority over the rights of a lien creditor with respect to the collateral, UCC9-102(a)(10).

(4) Furthermore, it seems a Secure Party (creditor) should put a UCC-1 Lien on the RECORD to cover his CERTIFICATE OF TITLE/GRANT DEED, and his rights in the collateral will supersede that of any alleged security interest holder UCC9-102(a)(10).

### III. CONCLUSION

Considering the constellation of circumstances and totality of the objective and unrebutted evidence, Mr. Barber's claims for treble damages and civil penalties violation as a matter of law. The record taken as a whole could only lead a rational trier of fact to find for Mr. Barber, and thus there is no genuine dispute.

What does it mean when our Appellate Courts opine that evidence must be of such weight and quality to create a reasonable inference of a fact? Obviously, not any evidence will do. The evidence has to be adequate to support a conclusion when viewed by a reasonable mind.

To be of such "weight", the evidence must be persuasive in comparison with other evidence.[1] To be of such "quality", the evidence must have a particular character or properly, often essential for a particular result.[2] How can any reasonable person (juror) view Defendant's "evidence" and be persuaded by its weight and quality.

The uncontroverted facts conclusively show that Defendants Regions disregarded any rights about the matters set forth in their duties, guidelines and policies.

---

[1] Black's Law Dictionary 580 (9th ed. 2009).
[2] id. At 1588.

**THEREFORED, THESE PREMISES CONSIDERED,** Plaintiff Charlie John Barber, II, respectfully asks this Honorable Court to enter an order: (a) granting Plaintiff's Motion for Judgment against Defendant on all claims; and (b) granting Plaintiff such further relief as the Court deems just and proper; and (c) be ordered to pay him compensatory and consequential damages. Further, Plaintiff seeks all other relief, including equitable relief, that the Court deems just and proper.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Charlie John Barber, II, prays that this Motion be set for hearing and that, upon hearing, judgment should be granted in favor of Plaintiff. The Plaintiff prays for judgment on all of the following issues collectively, or in the alternative individually: (1) Defendants breached valid and enforceable contracts and laws with the Plaintiff; (2) Defendants' violation of multiple violations in regards to Federal and State laws; and (3) that Defendant Regions is liable for liquidated damages for their breach of contract on numerous instances.

RESPECTFULLY SUBMITTED,

_____
Charlie John Barber II, Sui Juris

3219 Bluecrest Street
Huntsville, Al 35805
(256) 541-0403[Telephone]
Charles.J.Barber.1@gmail.com

**Plaintiff**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document was sent on October 17, 2017, to counsel for Defendant's, Regions d/b/a Regions Mortgage, Attorney in Charge, via U.S. Mail and thereby served on the same.

REGIONS D/B/A REGIONS MORTGAGE
1900 5th Ave
BIRMINGHAM, AL 35203

_____
Charlie J. Barber, II